UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GATAN, INC.,
    Plaintiff,

    v.

NION COMPANY,
    Defendant.

Case No. 15-cv-1862-PJH

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

Defendant's motion to dismiss the second amended complaint ("SAC") came on for hearing before this court on March 23, 2016.  Plaintiff Gatan, Inc. ("plaintiff" or "Gatan") appeared through its counsel, William Goines.  Defendant Nion Company ("defendant" or "Nion") appeared through its counsel, Alfred Pfeiffer.  Having read the papers filed in conjunction with the motion and carefully considered the arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS in part and DENIES in part defendant's motion as follows.

**BACKGROUND**

This is a breach of contract case.  Plaintiff Gatan is a manufacturer of spectrometers (components used in electron microscopes), and defendant Nion is a manufacturer of electron microscopes.  Nion has not historically manufactured its own spectrometers, and has instead bought third-party spectrometers for use in its microscopes.  Nion entered into such a purchase agreement with Gatan, and that agreement gives rise to this suit.

Specifically, on February 2, 2010, Gatan and Nion entered into a "Reseller

Agreement," whereby Nion agreed to purchase certain products from Gatan (including spectrometers) that it would incorporate into its electron microscopes. See SAC, Ex. A.

The Reseller Agreement (or "Agreement") contained a non-competition provision (paragraph 16 of the Agreement), which provided as follows:

> **Non-Competition**.  Reseller shall not, during the term and for one (1) year following the conclusion of the Term, market, sell or distribute, or attempt to market, sell or distribute (i) any good or item that is similar to, or competitive with, any of the Products and (ii) any spectrometer for electron energy loss spectroscopy.  In the event that Reseller markets, sells, or distributes any good or item that is similar to or competitive with any of the Products, Gatan may immediately terminate this agreement.  In the event that Reseller provides a monochromator with its microscope and Gatan is unable to provide a spectrometer for energy loss spectroscopy with a FWHM energy resolution equal to or less than 0.71 times the specified total FHVVM system resolution, Reseller may develop and sell such a spectrometer itself.  This exemption applies only to Reseller's own new microscopes or to Reseller's monochromator upgrades for its previously sold microscopes.  In the event of any threatened or actual breach of the obligations herein, Gatan may, in addition to any other specific remedy for relief, enforce the performance of these obligations and this Agreement by injunction or specific performance upon application to a court of competent jurisdiction.

Gatan generally alleges that Nion has entered into transactions with third parties, in violation of paragraph 16.  The operative second amended complaint asserts four causes of action.

The first is for breach of contract, and is based on Nion's alleged violation of paragraph 16 by competing with Gatan.

The second claim is also for breach of contract, and is also based on paragraph 16, but it is based on Nion's alleged failure to comport with the procedure set forth in the third sentence of paragraph 16 – "In the event that Reseller provides a monochromator with its microscope and Gatan is unable to provide a spectrometer for energy loss spectroscopy with a FWHM energy resolution equal to or less than 0.71 times the specified total FHVVM system resolution, Reseller may develop and sell such a spectrometer itself."  Gatan argues that Nion did not provide spectrometer specifications to Gatan before developing one of its own.

The third cause of action is for breach of the implied duty of good faith and fair dealing, and is based on much of the same conduct as above, but also on the additional allegation that Nion "criticized Gatan's technology with no factual bases for doing so." SAC, ¶ 51.

Finally, the fourth cause of action is for declaratory relief, and is based on paragraph 15 of the contract, which provides that "[a]ll discoveries and developments that Reseller may conceive, develop, or acquire, whether alone or with others, arising out of the incorporation of products into Reseller's systems (collectively, 'developments') shall be the sole property of Reseller.  Reseller shall grant to Gatan a nonexclusive, perpetual, worldwide, irrevocable license to make, have made, sell, have sold and use all of the developments."  Gatan argues that it has requested a license to certain developments, and that Nion has refused.  See SAC, ¶ 59.

**DISCUSSION**

A.   Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint.  Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  Review is generally limited to the contents of the complaint, although the court can also consider a document on which the complaint relies if the document is central to the claims asserted in the complaint, and no party questions the authenticity of the document.  See Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007).

To survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2)

A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory.  Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir.

1  2013).  While the court is to accept as true all the factual allegations in the complaint,

2  legally conclusory statements, not supported by actual factual allegations, need not be

3  accepted.  Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009); see also In re Gilead Scis.

4  Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008).

5      The allegations in the complaint "must be enough to raise a right to relief above

6  the speculative level," and a motion to dismiss should be granted if the complaint does

7  not proffer enough facts to state a claim for relief that is plausible on its face.  Bell Atlantic

8  Corp. v. Twombly, 550 U.S. 544, 555, 558-59 (2007) (citations and quotations omitted).

9  A claim has facial plausibility when the plaintiff pleads factual content that allows the

10  court to draw the reasonable inference that the defendant is liable for the misconduct

11  alleged."  Iqbal, 556 U.S. at 678 (citation omitted).  "[W]here the well-pleaded facts do not

12  permit the court to infer more than the mere possibility of misconduct, the complaint has

13  alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  Id. at 679.

14  Where dismissal is warranted, it is generally without prejudice, unless it is clear the

15  complaint cannot be saved by any amendment.  Sparling v. Daou, 411 F.3d 1006, 1013

16  (9th Cir. 2005).

17  B.    Legal Analysis

18      Defendant's primary argument on this motion is that paragraph 16's non-compete

19  provision is rendered void by California Business & Professions Code 16600, which

20  provides that, other than certain statutory exceptions (none of which apply in this case),

21  "every contract by which anyone is restrained from engaging in a lawful profession, trade,

22  or business of any kind is to that extent void."  Plaintiff's first cause of action is based

23  entirely on paragraph 16, so if that paragraph is void under section 16600, the claim must

24  be dismissed.

25      While Gatan does not point to any statutory exception that would preserve the

26  validity of paragraph 16's non-compete provision, it does point to case law supporting the

27  existence of a "trade secret exception."  Specifically, the Ninth Circuit has held that

28  "[u]nder California law, non-competition agreements are unenforceable unless necessary

4

1    to protect an employer's trade secret," and a court in this district has further observed
2    that, because section 16600 has not been limited to the employer/employee context,
3    there is no reason to similarly limit the trade secret exception.  Asset Marketing Systems,
4    Inc. v. Gagnon, 542 F.3d 748, 758 (9th Cir. 2008); Richmond Technologies, Inc. v.
5    Aumtech Business Solutions, 2011 WL 2607158, at *18 (N.D. Cal. July 1, 2011) (noting
6    that courts have held that "a non-compete or non-solicitation clause may be valid under
7    section 16600 if it is necessary to protect a trade secret"); see also Golden v. California
8    Emergency Physicians Medical Group, 782 F.3d 1083, 1090 (9th Cir. 2015) (section
9    16600 "does not specifically target covenants not to compete between employees and
10   their employers").

11   Thus, in order to save paragraph 16 from being rendered void by section 16600,
12   Gatan must adequately allege that it is "necessary to protect" its trade secrets.  And
13   under any reading of the Agreement (which is relied upon, and attached to, the
14   complaint), paragraph 16 cannot be considered "necessary" to protect Gatan's trade
15   secrets.  The Agreement already contains a separate provision, entitled "Use of
16   Confidential Information," which provides protection for Gatan's trade secrets.

17   The term "Confidential Information" is defined in paragraph 12 of the Agreement,
18   and paragraph 13 requires Nion to "hold and maintain strictly confidential all Confidential
19   Information," and provides that it "shall not at any time, whether during the Term or
20   thereafter, furnish, divulge, communicate, or otherwise directly or indirectly disclose or
21   use any such Confidential Information, howsoever obtained or acquired, or compile,
22   duplicate, develop or adapt such Confidential Information for any purpose, other than
23   strictly incidental to, and solely in furtherance and within the scope of, the Agreement."
24   See SAC, Ex. A, ¶ 13.  Paragraph 13 further provides that Nion "will not directly or
25   indirectly create any products, parts, systems, methods, tools, dies, techniques,
26   processes, solutions, or other technologies, ideas, items, or concepts at any time sold,
27   marketed, used, or developed by Gatan or its affiliates, or any part thereof, or otherwise
28   use any Confidential Information for commercial purposes or in any manner detrimental

1  to Gatan or its affiliates."

2  Given the comprehensive protections set forth in paragraph 13, the court finds that
3  the non-compete provision in the Agreement is not necessary to protect Gatan's trade
4  secrets.  Accordingly, the non-compete provision in paragraph 16 is rendered void by
5  section 16600, and as a result, the motion to dismiss the first cause of action is
6  GRANTED without leave to amend.

7  As mentioned above, the second cause of action is based on the third sentence of
8  paragraph 16, which requires Nion to provide spectrometer specifications to Gatan, in
9  order to allow Gatan an opportunity to meet those specifications, before Nion may
10  develop and sell a spectrometer of its own.  See SAC, Ex. A, ¶ 16.  Gatan argues that,
11  even if the court finds the non-compete provision to be void, it may simply "sever the first
12  sentence of paragraph 16" and enforce the remainder of the paragraph.

13  The court disagrees, and finds that the requirement to provide Gatan with
14  spectrometer specifications makes no sense in the absence of a non-compete provision.
15  The provision at issue essentially carves out an exception to the non-compete provision,
16  allowing Nion to compete only if a certain prerequisite is met.  However, if there is no
17  enforceable non-compete provision, then Nion is free to sell its own spectrometer without
18  any need to comply with a prerequisite.  Accordingly, the motion to dismiss the second
19  cause of action is GRANTED without leave to amend.

20  Plaintiff's third cause of action alleges a breach of the implied duty of good faith
21  and fair dealing, and while it is based largely on the same allegations as the first two
22  causes of action, it also contains some free-standing allegations – specifically, that Nion
23  "criticized Gatan's technology with no factual bases for doing so," and that it "discusse[d],
24  in detail . . . the weaknesses in Gatan's spectrometer design and how Nion would
25  improve upon this in their own design."  SAC, ¶¶ 31, 51.

26  While these allegations do not directly depend on the non-compete provision, they
27  do indirectly depend on it.  If there were no non-compete provision in the first place, Nion
28  would have been free to "criticize" Gatan's product and to "discuss" its weaknesses and

6

1  potential areas for improvement (though, if those criticisms were indeed untrue, Gatan
2  might be able to proceed under a business tort theory).  And now that the court has found
3  the non-compete provision to be unenforceable, the parties are in the same position that
4  they would have been if there had never been a non-compete provision.  For that reason,
5  the court finds no implied duty not to criticize or discuss the weaknesses of each other's
6  product, and it GRANTS the motion to dismiss plaintiff's third cause of action without
7  leave to amend.

8  Plaintiff's fourth cause of action is based on paragraph 15 of the Agreement, which
9  provides as follows:

> All discoveries and developments that [Nion] may conceive, develop, or acquire, whether alone or with others, arising out of the Incorporation of Products into [Nion's] systems (collectively, "Developments") shall be the sole property of [Nion].  [Nion] shall grant to Gatan a non-exclusive, perpetual, worldwide, irrevocable license to make, have made, sell, have sold, and use all the Developments.

14 The complaint alleges that "[i]n or about spring 2014, Gatan requested a license
15 from Nion pursuant to paragraph 15," but Nion's response "indicated that it did not
16 believe that Nion was obligated to provide Gatan with the license it was requesting under
17 the Agreement, and refused to provide Gatan with the license it requested."  SAC, ¶ 29.
18 Specifically, Nion acknowledged that there were two such "discoveries and
19 developments," and told Gatan that it would be "happy to place both discoveries in the
20 public domain, and they are actually rather obvious," and that "[t]here is no need for a
21 license to use them."  SAC, ¶ 30.  However, the Agreement is clear in requiring Nion to
22 "grant to Gatan" a license, and does not create any exception for discoveries that Nion
23 would be "happy to place" in the public domain (at some unspecified time), or even
24 discoveries that Nion claims are "rather obvious."  Indeed, if Nion is willing to place the
25 discoveries in the public domain, then it should be equally willing to grant Gatan the
26 license to which it claims to be entitled.  Accordingly, defendant's motion to dismiss the
27 fourth cause of action is DENIED.

**CONCLUSION**

For the foregoing reasons, defendant's motion to dismiss the second amended complaint is GRANTED, without leave to amend, as to the first, second, and third causes of action, and DENIED as to the fourth cause of action.

**IT IS SO ORDERED.**

Dated:  March 30, 2016

_____
PHYLLIS J. HAMILTON
United States District Judge