UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GATAN, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>NION COMPANY,<br><br>    Defendant. | Case No. 15-cv-01862-PJH<br><br>**ORDER GRANTING MOTION FOR LEAVE TO AMEND THE COMPLAINT IN PART AND DENYING MOTIONS FOR LEAVE TO FILE UNDER SEAL**<br><br>Re: Dkt. Nos. 84, 85, 87, 94, 99, 102 |

Plaintiff Gatan, Inc.'s motion for leave to amend its complaint came on for hearing before this court on January 4, 2017. Plaintiff appeared through its counsel, Rachael Smith. Defendant Nion Company appeared through its counsel, Alfred Pfeiffer and Katherine Larkin-Wong. In conjunction with the briefing, the parties filed several administrative motions and stipulations to file materials under seal. See Dkt. 84, 87, 94, 99, 102. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS the motion for leave to amend in part, and DENIES the motions to file under seal, for the following reasons.

## BACKGROUND

**A.**  **Factual and Procedural History**

This is a breach of contract case between two providers of electron microscopes, which allow imaging at a higher resolution than light-based microscopes. Plaintiff Gatan, Inc. ("Gatan") is a manufacturer of spectrometers, a component used in electron microscopes. Defendant Nion Company ("Nion") is a manufacturer of electron microscopes. Historically, Nion has not manufactured its own spectrometers, but instead would buy third-party spectrometers for use in its microscopes.

In late 2009, Nion approached Gatan to collaborate on an electron microscope project. On February 2, 2010, Nion entered into an agreement with Gatan, which gave rise to this suit. Through the Reseller Agreement (the "Agreement"), Nion agreed to purchase certain products from Gatan (including its spectrometers) that it would incorporate into its electron microscopes. The heart of the dispute, as previously framed, focused on paragraph 16 of the Agreement, a non-compete clause.

The original complaint was filed on April 25, 2015. Dkt. 1. After Nion filed a motion to dismiss, Dkt. 17, Gatan withdrew its original complaint and filed the first amended complaint ("FAC") on July 2015. Dkt. 21. Nion again moved to dismiss, arguing that the breach of contract claim was preempted by California Business & Professions Code section 16600, which generally prohibits enforcement of non-compete clauses. The court granted the motion on November 18, 2015. Dkt. 33. The court gave leave to amend, however, so that Gatan could plead that a "trade secret exception" to section 16600 saved its breach of contract claim. Id.

The second amended complaint ("SAC") followed, which asserted four causes of action. Dkt. 41. The first claim was for breach of contract, alleging that Nion competed with Gatan in violation of paragraph 16 of the Agreement. The second claim was also for breach of contract: Gatan argued that Nion did not provide spectrometer specifications to Gatan before developing one of its own, violating the procedure set forth in paragraph 16. The third claim, based largely on the same conduct at issue in the first two claims, alleged that Nion's actions violated the implied covenant of good faith and fair dealing.

The fourth claim was for declaratory relief based on paragraph 15 of the Agreement, which provides that "[a]ll discoveries and developments that [Nion] may conceive, develop, or acquire, whether alone or with others, arising out of the incorporation of Products into [Nion's] systems (collectively, "developments") shall be the sole property of [Nion]. [Nion] shall grant to Gatan a nonexclusive, perpetual, worldwide, irrevocable license to make, have made, sell, have sold and use all of the developments." Gatan alleges Nion has refused to grant a license to all "developments."

On March 23, 2016, the court heard a motion to dismiss the SAC. The central issues were whether the claims were preempted by section 16600, and whether any "trade secret exception" to section 16600 saved the claims. On March 30, 2016, the court granted the motion to dismiss in part. Dkt. 55. The court ruled that the trade secret exception did not apply because paragraph 16 was not "necessary to protect" Gatan's trade secrets, which were protected by separate provisions of the Agreement—specifically paragraphs 12 and 13. Id. at 5–6. Accordingly, the court dismissed the first three causes of action. The court denied the motion to dismiss the declaratory relief claim, however.

On April 21, 2016, the court held a case management conference. The parties disputed whether the case should proceed at all in light of Nion's proffer of a license. Dkt. 61 at 2 (hearing transcript). Gatan maintained that the offer was insufficient because "we're entitled to learn all the discoveries, all of the conceptions that they have made utilizing the technology that we provided to them under the Reseller Agreement." Id. at 3. The court indicated that Gatan could file an interrogatory limited to the issue of whether there were other "discoveries" that fell within the language of the paragraph 15, with possible document requests to follow if the answer to that interrogatory was "yes." Id. at 9–10.

### B. The Proposed Third Amended Complaint

Purportedly based on that limited discovery, Gatan now moves for leave of court to file a proposed third amended complaint ("PTAC"). Dkt. 85. The PTAC adds four new claims, specifically:

- **Claim 1: Misappropriation of Trade Secrets**. Gatan alleges that Nion used Gatan's confidential trade secret information to develop its own spectrometer. PTAC ¶¶ 45–60.

- **Claim 2: Breach of Contract I**. Gatan alleges that Nion breached paragraphs 12–14 of the Agreement, which restrict Nion's use of Gatan's confidential information. PTAC ¶¶ 61–72.

3

- **Claim 3: Breach of Contract II**.  Gatan alleges that Nion breached paragraph 15 of the Agreement, which, as explained above, required Nion to grant Gatan a license to certain "developments."  PTAC ¶¶ 73–84.

- **Claim 4: Unjust Enrichment**.  Gatan alleges that Nion "tricked" Gatan into disclosing its trade secrets, contrary to Nion's representations that it had no intention of entering into the spectrometer market or competing against Gatan.  PTAC ¶¶ 85–87.

The fifth claim, for declaratory relief based on paragraph 15 of the Agreement, survived the prior motions to dismiss and therefore is not at issue in this motion.

The PTAC introduces a number of new allegations to support these claims.  In particular, Gatan now relies on other provisions of the contract besides it prior emphasis on paragraphs 15 and 16.  Paragraphs 12 and 13 read in part:

> **12. Confidential Information.**  In the course of performing services for Gatan, [Nion] will . . . acquire, obtain, or have access to confidential and/or proprietary information relating to Gatan . . . including, without limitation . . . ideas, inventions, designs, plans, . . . technical and statistical data [and other types of confidential information, expressly including "trade secrets"].
>
> **13. Use of Confidential Information.**  [Nion] shall hold and maintain strictly confidential all Confidential Information, and shall not at any time . . . directly or indirectly disclose or use any such Confidential Information . . . for any purpose, other than . . . solely in furtherance and within the scope of, the Agreement. . . .  [Nion] agrees that it will not directly or indirectly create any products . . . or otherwise use any Confidential Information for commercial purposes or in any matter detrimental to Gatan . . . .

PTAC Ex. A at 3.  The PTAC also relies on Nion's funding application to the Department of Energy's Small Business Innovation Research ("SBIR") program.  Gatan knew generally of this application earlier, but only obtained the confidential details through discovery.

The gist of Gatan's new theory is that the SBIR application reveals that Nion used the trade secret information it received from Gatan to begin building its own spectrometers.  On February 2, 2010, the parties entered into the Agreement at issue.  PTAC ¶ 19.  Pursuant to the Agreement, Gatan would provide a partially assembled spectrometer and work with Nion to modify it for use in Nion's monochromated microscope for Arizona State University.  PTAC ¶¶ 15–16.  In response to requests from

4

Nion in the course of 2010 and early 2011, Gatan alleges that it disclosed a number of its trade secrets to Nion. PTAC ¶¶ 20–21. In September 2011, 20 months into the collaboration with Gatan, Nion submitted its SBIR proposal for an "Ultra High Energy Resolution Electron Spectrometer for Atomic Resolution Studies." PTAC ¶ 27. Gatan alleges that, contrary to the Agreement, Gatan's trade secrets were used by Nion to develop its own competing spectrometer. Prior to the Agreement, Nion was not in the business of making spectrometers. PTAC ¶ 32.

**DISCUSSION**

**A.   Legal Standards**

**1.   Motions for Leave to Amend**

Under Federal Rule of Civil Procedure 15, a party may amend its pleading as a matter of course within 21 days. Fed. R. Civ. P. 15(a)(1). Thereafter, amendment requires either the opposing party's written consent or the court's leave. Fed. R. Civ. P. 15(a)(2). However, courts should "freely give leave when justice so requires." Id. In deciding whether to grant a motion for leave to amend, the court considers bad faith, undue delay, prejudice to the opposing party, repeated failure to cure deficiencies by pervious amendment, futility of amendment, and whether the moving party has previously amended the pleading. In re W. States Wholesale Natural Gas Antitrust Litig., 715 F.3d 716, 738 (9th Cir. 2013); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003). Of these factors, the consideration of prejudice to the opposing party carries the greatest weight. Eminence Capital, 316 F.3d at 1052. "The party opposing amendment bears the burden of showing prejudice." See DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 187 (9th Cir.1987).

"[D]elay alone is not sufficient to justify the denial of a motion requesting leave to amend." DCD Programs, 833 F.2d at 187. However, "late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." Acri v. Int'l Ass'n of Machinists & Aerospace Workers, 781 F.2d 1393, 1398 (9th Cir. 1986).

Ultimately, the decision to grant or deny a request for leave to amend rests in the discretion of the trial court. "The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) (citation omitted).

### 2. Motions to File Under Seal

"The proponent of sealing bears the burden with respect to sealing. A failure to meet that burden means that the default posture of public access prevails." Kamakana v. City & County of Honolulu, 447 F.3d 1172, 1182 (9th Cir. 2006).

When a motion is "more than tangentially related to the merits of a case," a strong presumption in favor of access applies. See Ctr. for Auto Safety v. Chrysler Grp., LLC, 809 F.3d 1092, 1101 (9th Cir. 2016). The party seeking to seal needs to articulate "compelling reasons" supported by specific factual findings to seal a document. Kamakana, 447 F.3d at 1178. When, as here, a motion is non-dispositive and only tangentially related to the merits, a lower burden—the "good cause" standard—applies. Id. at 1179–80. The movant need only show that "'good cause' exists to protect th[e] information from being disclosed to the public by balancing the needs for discovery against the need for confidentiality." Phillips ex rel. Estates of Byrd v. Gen. Motors Corp., 307 F.3d 1206, 1213 (9th Cir. 2002).

In this district, requests to file documents under seal in civil cases are governed by Civil Local Rule 79-5, which provides that "[n]o document may be filed under seal . . . except pursuant to a Court order that authorizes the sealing of the particular document, or portions thereof[;]" and further, that a sealing order may issue only based upon a request showing that the document, or portions thereof, is privileged, or protectable as a trade secret, or otherwise entitled to protection under the law. Civ. L.R. 79-5(a). In particular, "[t]he request must be narrowly tailored to seek sealing only of sealable material . . . ." Id.

///

///

### B. Gatan's Motion for Leave to Amend

In considering whether to grant leave to amend, the court must weigh several factors, including undue delay, prejudice to the opposing party, futility of amendment, bad faith, and whether the moving party has previously amended the pleading. Eminence Capital, 316 F.3d at 1051. The court will address these considerations in turn below.

#### 1. Undue Delay

Nion's primary argument against permitting leave to amend asserts that Gatan needlessly delayed in bringing claims for trade secret misappropriation and breach of paragraphs 12–14 of the Agreement. In Nion's view, Gatan been "talking about a trade secrets claim" since 2015, but has only now gotten around to filing one. Nion argues that Gatan should not be permitted yet another chance to amend in order to bring claims that it could have brought earlier.

The court agrees with Nion that Gatan could have brought the trade secret claims prior to the receipt of the SBIR application. This fact is apparent from Gatan's own pleadings, particularly the SAC. See, e.g., SAC ¶¶ 9, 23, 31. The SAC itself explicitly alleged that Nion "us[ed] Gatan's trade secrets," SAC at p. 7, but for whatever reason Gatan chose to not assert a separate trade secret claim, instead alleging that Nion's actions constituted a breach of paragraph 16 of the Agreement. In short, the record shows that Gatan was already aware, when it filed the SAC, of a possible trade secret claim as well as a claim for a breach of paragraphs 12–14. Gatan's argument that it was not aware of the basis for a trade secret claim until it received the full SBIR application is simply not persuasive in light of the history of this case.

Thus, the court finds that Gatan unduly delayed in bringing its new claims. This factor weighs against a grant of leave to amend.

#### 2. Prejudice

Undue delay is not the only factor, however. The most important factor is whether permitting amendment would prejudice Nion. Eminence Capital, 316 F.3d at 1052.

///

7

Although filed in 2015, this case is at a very early procedural posture, essentially still at the pleading stage. There has been only very limited discovery. Although Gatan argues that it would suffer prejudice in the form of having to brief another motion to dismiss, the "burden of having to defend a new claim or engage in additional discovery does not, standing alone, constitute undue prejudice." Pipeline Techs., Inc. v. Telog Instruments, Inc., No. CV 13-02104-PHX-PGR, 2014 WL 2468343, at *2 (D. Ariz. June 3, 2014) (citing DCD Programs, 833 F.2d at 186). Thus, despite Gatan's delay in bringing the new claims, the court finds that Nion would not be unduly prejudiced by amendment, which weighs in favor of granting leave to amend.

### 3. Futility

Although Nion devotes much of its opposition brief to argument that amendment is futile, the court finds that these assertions are better suited to resolution on a motion to dismiss or for summary judgment. On the current record, the court cannot say Gatan's new claims would be futile, with one exception—the unjust enrichment claim.

Unjust enrichment is not a "stand-alone cause of action" in California. Smith v. LG Elecs. U.S.A., Inc., No. C 13-4361 PJH, 2014 WL 989742, at *12 (N.D. Cal. Mar. 11, 2014); Hill v. Roll Int'l Corp., 195 Cal. App. 4th 1295, 1307 (2011) ("Unjust enrichment is not a cause of action, just a restitution claim."); Levine v. Blue Shield of California, 189 Cal. App. 4th 1117, 1138 (2010) ("[T]here is no cause of action in California for unjust enrichment.") (situation omitted). As a result, amendment to add the proposed unjust enrichment claim is futile. Indeed, Gatan appears to concede the issue by not addressing it in reply. Accordingly, the court DENIES the motion for leave to amend with respect to the unjust enrichment claim.

At this stage, the court cannot conclude that amendment to add claims for trade secret misappropriation, breach of paragraphs 12–14, and breach of paragraph 15 are futile. This factor is therefore neutral with respect to these claims. However, as noted at the hearing, the court has doubts as to whether Gatan has adequately identified the trade secrets in the PTAC. While the court cannot find that amendment is futile on this basis,

Gatan will likely need to provide more detail to defendants in order to survive a motion to dismiss.

### 4. Other Leave to Amend Factors

Nion alleges that Gatan's amendment is made with the bad faith motive to keep Nion "ensnared in litigation" and avoid competing with it on the merits of its spectrometers. However, there is no evidence of bad faith other than Nion's bare assertions of an anticompetitive motive. On the contrary, as Nion acknowledges, Gatan's change in counsel offers another explanation for the amendment, which is hardly a bad faith motive. This factor, therefore, weighs in favor of leave to amend.

On the other hand, the fact that Gatan has previously amended its complaint several times cuts against granting leave to amend. In sum, then, the court finds that the remaining factors cut neither in favor nor against leave to amend.

### 5. Analysis

Fundamentally, this motion requires weighing Gatan's undue delay in bringing the new claims against the absence of any substantial prejudice to Nion. Although the court is not persuaded that Gatan's delay was justified, "delay alone is not sufficient to justify the denial of a motion requesting leave to amend." DCD Programs, 833 F.2d at 187. Moreover, the law is clear in the Ninth Circuit that the general policy in favor of granting leave to amend "is to be applied with extreme liberality." Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990). Thus, with the exception of the unjust enrichment claim, the court GRANTS Gatan leave to file an amended complaint.

## C. The Parties' Motions to File Under Seal

For the reasons stated on the record at the hearing, the court finds that the parties have not demonstrated good cause to seal the materials at issue, and thus DENIES the parties' motions to file materials under seal in conjunction with the briefing on this motion. As explained at the hearing, only trade secret information *itself*, not general descriptions or categories of trade secrets, is properly sealable. The parties' request to file redacted briefs is therefore DENIED. The parties shall re-file unredacted briefs on the public

docket within 14 days of the entry of this order.

The parties shall meet and confer to agree on more narrowly tailored redactions to the proposed third amended complaint and the exhibits thereto, and submit an appropriate stipulation in conjunction with the filing of the third amended complaint.

## CONCLUSION

For the foregoing reasons, the court GRANTS Gatan's motion for leave to amend its complaint in part. The third amended complaint must be filed with the court within 21 days from the date of this order. The amended complaint must contain narrowly tailored redactions limited to confidential trade secret information pursuant to this order and the parties' meet and confer process, and may not contain any new claims or parties unless consented to by Nion. Nion will have 21 days thereafter to respond to the third amended complaint. If Nion choses to move to dismiss the complaint in lieu of answering, the court will resolve the matter on the papers, without a hearing.

**IT IS SO ORDERED.**

Dated: January 5, 2017

_____
PHYLLIS J. HAMILTON
United States District Judge