UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GATAN, INC., | |
| Plaintiff, | Case No.  15-cv-01862-PJH |
| v. | **ORDER DENYING MOTION TO DISMISS THIRD AMENDED COMPLAINT** |
| NION COMPANY, | |
| Defendant. | Re: Dkt. Nos. 120, 121 |

Before the court is defendant Nion Company's motion to dismiss the third amended complaint.  The matter is fully briefed and suitable for decision without oral argument.  Accordingly, the hearing set for April 5, 2017 is VACATED.  Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court DENIES the motion for the following reasons.

## BACKGROUND

**A.    Factual Background**

The court has reviewed the facts of this case in detail in its prior orders.  See Dkt. 55, 106.  In brief, plaintiff Gatan, Inc. ("Gatan") is a manufacturer of components used in electron microscopes, including spectrometers.  Defendant Nion Company ("Nion") is a manufacturer of electron microscopes.  Historically, Nion did not manufacture its own spectrometers, but instead would buy third-party spectrometers for use in its microscopes.

The parties' dispute centers on a February 2, 2010 "Reseller Agreement" between Gatan and Nion (the "Agreement").   Pursuant to the Agreement, the parties worked together to modify a Gatan spectrometer for integration into a Nion microscope for

Arizona State University ("ASU").  Gatan accuses Nion of breaching the contract and misusing confidential information divulged under the terms of the Agreement.

**B.    Procedural History**

The original complaint was filed on April 25, 2015.  Dkt. 1.  After Nion filed a motion to dismiss, Dkt. 17, Gatan withdrew its original complaint and filed the first amended complaint ("FAC") on July 20, 2015.  Nion again moved to dismiss the FAC, arguing that the breach of contract claim—which relied on paragraph 16 of the Agreement—was preempted by California Business and Professions Code section 16600 ("section 16600"), which prohibits enforcement of non-compete clauses.  The court granted the motion to dismiss on November 18, 2015.  Dkt. 32.  The court gave leave to amend, however, so that Gatan could plead that a "trade secret exception" to section 16600 saved its breach of contract claim.  See Dkt. 33.

The second amended complaint ("SAC") followed, asserting four causes of action. The first claim was for breach of contract, alleging that Nion competed with Gatan in violation of paragraph 16 of the Reseller Agreement.  The second claim was also for breach of contract:  Gatan argued that Nion did not provide spectrometer specifications to Gatan before developing its own spectrometer, violating the procedure set forth in paragraph 16.  The third claim alleged that Nion's actions violated the implied duty of good faith and fair dealing.  The fourth claim was for declaratory relief based on paragraph 15 of the Agreement, which provides that Nion shall grant Gatan a nonexclusive license to "[a]ll discoveries and developments that [Nion] may conceive, develop, or acquire, whether alone or with others, arising out of the incorporation of [Gatan's spectrometer] into [Nion's] systems (collectively, 'Developments')."  Gatan alleged that Nion had refused to grant it a license to all of the "Developments."

On March 23, 2016, the court heard a motion to dismiss the SAC.  The central issues were whether paragraph 16 was preempted by section 16600, and whether the "trade secret exception" could save the breach of contract claims.  On March 30, 2016, the court granted the motion to dismiss in part.  Dkt. 55.  The court ruled that the alleged

1  "trade secret exception" did not apply because paragraph 16 was not "necessary to

2  protect" Gatan's trade secrets, which were protected by separate provisions of the

3  Agreement—specifically paragraphs 12 and 13.  Id. at 5–6.  Accordingly, the court

4  dismissed the first three causes of action.  The court denied the motion to dismiss the

5  declaratory relief claim regarding paragraph 15, however.

6        On January 5, 2017, the court granted Gatan's motion for leave to file a third

7  amended complaint in part.  Dkt. 106.  The proposed complaint sought to assert new

8  claims for breach of contract based on paragraphs 12 and 13 of the Reseller Agreement,

9  as well as a new claim for misappropriation of trade secrets.  The court found that

10  although Gatan unduly delayed in asserting these claims, it would permit the amendment

11  in light of the lack of substantial prejudice to Nion.  Id. at 7–9.

12  **C.    Allegations in the Third Amended Complaint**

13        Gatan filed its third amended complaint ("TAC") on January 26, 2017.  Dkt. 115.

14  The TAC asserts four claims: (1) misappropriation of trade secrets; (2) breach of

15  paragraphs 12–14 of the Agreement regarding "confidential information"; (3) breach of

16  paragraph 15 of the Agreement regarding the developments license; and (4) declaratory

17  relief with respect to the developments license.

18        The factual background is the same as alleged in previous complaints.  Gatan is a

19  manufacturer of spectrometers, including the Enfinium (a.k.a. the "Quefina"), which is

20  based on the technology of the GIF Quantum, an imaging energy filter.  TAC ¶¶ 13–14.

21  In the past, Nion did not market or sell its own spectrometers.  TAC ¶ 15.  In October

22  2009, Nion approached Gatan to collaborate on an electron microscope for ASU.  TAC ¶

23  16.  The project required Gatan to provide Nion with a partially assembled spectrometer,

24  which Nion would then modify with Gatan's help.  Id.  Because the collaboration would

25  require Gatan to disclose confidential information, Gatan received assurances from

26  Nion's President (and former Gatan employee), Dr. Ondrej Krivanek, that Nion "won't

27  have any problems signing on the dotted line that Nion will never make a spectrometer

28  [unless] it turned out we needed to go beyond what Gatan is doing."  TAC ¶¶ 18–19.

United States District Court
Northern District of California

1.      **The Reseller Agreement**

On February 2, 2010, Nion entered into the Reseller Agreement with Gatan.  TAC ¶ 20.  The key provisions for the purposes of this motion are paragraphs 12, 13, and 15. Paragraph 12 broadly defines the term "Confidential Information":

> **12.   Confidential Information.**  In the course of performing services for Gatan, [Nion] . . . will acquire, obtain, or have access to confidential and/or proprietary information relating to Gatan . . . including, without limitation, (a) information, ideas, inventions, designs, plans, prototypes, concepts, processes, formulations, specifications, materials, samples, applications, records, and technical and statistical data related to or used in connection with the design, development, manufacture, advertising, marketing, distribution, and sale of Gatan's products and the operation of its businesses; (b) computer software, programs, applications, systems, and data . . . ; and (e) trade secrets (all such information hereinafter referred to as "Confidential Information") . . . .

TAC Ex. A at 3.

Paragraph 13 limits Nion's use of "Confidential Information," providing that Nion may not disclose or use Gatan's confidential information except in furtherance of the Agreement:

> **13.   Use of Confidential Information.**   [Nion] shall hold and maintain strictly confidential all Confidential Information, and shall not at any time . . . directly or indirectly disclose or use any such Confidential Information, howsoever obtained or acquired, or compile, duplicate, develop or adapt such Confidential Information for any purpose, other than strictly incidental to, and solely in furtherance and with the scope of, the Agreement. . . .

TAC Ex. A at 3.

Paragraph 13 goes on to prohibit Nion from creating any products that compete with Gatan or to "otherwise use" Confidential Information for commercial purposes:

> [Nion] agrees that it will not directly or indirectly create any products . . . or other technologies . . . at any time sold, marketed, used, or developed by Gatan . . . or otherwise use any Confidential Information for commercial purposes or in any manner detrimental to Gatan or its affiliates. . . .

Id.

Finally, paragraph 15 requires that Nion grant to Gatan a non-exclusive license to any "Developments" conceived as a result of the collaboration:

4

> **15. Developments.** All discoveries and developments that [Nion] may conceive, develop, or acquire, whether alone or with others, arising out of the incorporation of Products into [Nion's] systems (collectively, "Developments") shall be the sole property of [Nion]. [Nion] shall grant to Gatan a nonexclusive, perpetual, worldwide, irrevocable license to make, have made, sell, have sold, and use all of the Developments.

TAC Ex. A at 3–4.

## 2.    The Alleged Trade Secrets

Gatan alleges that it disclosed confidential information and trade secrets to Nion pursuant to the Agreement, and that Nion "surreptitiously used [Gatan's] trade secrets to develop its own competing spectrometer." TAC ¶ 3. Although Nion assured Gatan that it did not want to compete in the spectrometer market, Nion already "had plans to develop its own spectrometer" at the time that the Agreement was signed. TAC ¶ 5. Subsequently, pursuant to Nion's 2011 Small Business Innovative Research ("SBIR") application, Nion received over a million dollars in funding to develop a spectrometer that modified and enhanced Gatan's Enfinium model. TAC ¶¶ 4, 41–45.

The alleged trade secrets divulged to Nion as part of the ASU collaboration comprise "details on the GIF Quantum's optical design, including performance specifications, noise specifications of critical power supplies, and prism and dodecapole lens and coil designs." TAC ¶ 21. Gatan generally describes this as "the trade secret recipes by which Gatan constructs the Enfinium's magnetic optics." TAC ¶ 22. More specifically, the alleged "trade secrets" include:

> [T]he many magnetic lenses and their exact mechanical and electrical design and placement, the shape of the electron trajectories through the spectrometer, the number and location of the various electron-optical crossovers, the exact way Gatan corrects the many electron-optical aberrations encountered in [electron energy loss] spectrometers, and the fine details of the resulting electron-optical performance.

TAC ¶ 22. Subsequent paragraphs in the TAC claim aspects of Gatan's technology that are interrelated with the five alleged trade secrets listed in TAC paragraph 22. See TAC ¶¶ 29–48. For example, Gatan claims "the number and location of crossovers" as a trade secret. TAC ¶ 30. "Crossovers" are "the locations of intermediate focus planes . . . relative to the lenses," which are "established by turning on the many lenses in very

1   specific ways." Id. Gatan claims the "detailed configuration of the 77 optical lenses" of

2   the Enfinium as another trade secret. TAC ¶¶ 29, 34. The Enfinium uses seven

3   "dodecapole" lenses to focus the electrons, each of which can be controlled

4   independently. TAC ¶¶ 25, 28.

### DISCUSSION

6   Nion now moves to dismiss the TAC. Dkt. 121. In conjunction with its motion,

7   Nion seeks leave of the court to file portions of its papers under seal, and further requests

8   that the court take judicial notice of several documents. Dkt. 120, 122.

9   **A.    Legal Standards**

10  **1.    Motions to Dismiss**

11  A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the

12  legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, Inc., 349 F.3d

13  1191, 1199–1200 (9th Cir. 2003). To survive a motion to dismiss for failure to state a

14  claim, a complaint generally must satisfy the requirements of Federal Rule of Civil

15  Procedure 8, which requires that a complaint include a "short and plain statement of the

16  claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

17  A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the

18  plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to

19  support a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699

20  (9th Cir. 1990). The court is to "accept all factual allegations in the complaint as true and

21  construe the pleadings in the light most favorable to the nonmoving party." Outdoor

22  Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899–900 (9th Cir. 2007).

23  Legally conclusory statements, not supported by actual factual allegations, need

24  not be accepted by the court. Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). The

25  allegations in the complaint "must be enough to raise a right to relief above the

26  speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations

27  and quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual

28  content that allows the court to draw the reasonable inference that the defendant is liable

United States District Court
Northern District of California

1    for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted).  "[W]here the well-

2    pleaded facts do not permit the court to infer more than the mere possibility of

3    misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is

4    entitled to relief.'" Id. at 679.

5        **2.    Motions for Leave to File Under Seal**

6        "The proponent of sealing bears the burden with respect to sealing.  A failure to

7    meet that burden means that the default posture of public access prevails." Kamakana v.

8    City & County of Honolulu, 447 F.3d 1172, 1182 (9th Cir. 2006).

9        When a motion is "more than tangentially related to the merits of a case," a strong

10   presumption in favor of access applies. See Ctr. for Auto Safety v. Chrysler Grp., LLC,

11   809 F.3d 1092, 1101 (9th Cir. 2016).  The party seeking to seal needs to articulate

12   "compelling reasons" supported by specific factual findings to seal a document.

13   Kamakana, 447 F.3d at 1178.  In contrast, a lower burden—the "good cause" standard—

14   applies to non-dispositive motions only tangentially related to the merits. Id. at 1179–80.

15   For "private materials unearthed during discovery"—as opposed to true judicial records—

16   the movant need only show that "'good cause' exists to protect th[e] information from

17   being disclosed to the public by balancing the needs for discovery against the need for

18   confidentiality." Phillips ex rel. Estates of Byrd v. Gen. Motors Corp., 307 F.3d 1206,

19   1213 (9th Cir. 2002).

20       In this district, requests to file documents under seal in civil cases are governed by

21   Civil Local Rule 79-5, which provides that "[n]o document may be filed under seal . . .

22   except pursuant to a Court order that authorizes the sealing of the particular document,

23   or portions thereof[;]" and further, that a sealing order may issue only based upon a

24   request showing that the document, or portions thereof, is privileged, or protectable as a

25   trade secret, or otherwise entitled to protection under the law. Civ. L.R. 79-5(b). "The

26   request must be narrowly tailored to seek sealing only of sealable material . . . ." Id.

27       If a party seeks to file under seal a document that has been designated

28   confidential by another party pursuant to a protective order, or if a party wishes to refer to

United States District Court
Northern District of California

information so designated by another party, the submitting party must file a motion for a sealing order, and the designating party must file a declaration within seven days "establishing that the designated information is sealable, and must lodge and serve a narrowly tailored proposed sealing order, or must withdraw the designation of confidentiality.  If the designating party does not file its responsive declaration as required by this subsection, the document or proposed filing will be made part of the public record."  Civ. L.R. 79-5(e).

**B.    Analysis**

Nion now moves to dismiss the TAC on the grounds that it (1) fails to state a claim for misappropriation of trade secrets; and (2) cannot state a claim for breach of contract because the relevant contractual provisions are invalid non-compete clauses under section 16600.

**1.    The Trade Secret Claim**

**i.    Identification of the Trade Secrets**

California law requires that a party alleging trade secret misappropriation "identify the trade secret with reasonable particularity" prior to discovery.  Cal. Civ. Proc. Code § 2019.210.  This provision requires "some showing that is reasonable, i.e., fair, proper, just and rational, under all of the circumstances."  Advanced Modular Sputtering, Inc. v. Superior Court, 132 Cal. App. 4th 826, 833 (2005).  The purpose of this requirement is to "give both the court and the defendant reasonable notice of the issues which must be met at the time of trial and to provide reasonable guidance in ascertaining the scope of appropriate discovery."  Brescia v. Angelin, 172 Cal. App. 4th 133, 144 (2009) (quoting Diodes, Inc. v. Franzen, 260 Cal. App. 2d 244, 253 (1968)).

The identification requirement is a "flexib[le]" one.  Brescia, 172 Cal App. 4th at 145.  Sometimes, as when "the alleged trade secrets consist of incremental variations . . . in a highly specialized technical field, a more exacting level of particularity may be required to distinguish the alleged trade secrets from matters already known to persons skilled in that field."  Advanced Modular, 132 Cal App. 4th at 836.  However, this "more

1    exacting" explanation is not required "in every case," and should be made only when

2    needed to further the goals of the statute. <u>Brescia</u>, 172 Cal. App. 4th at 148.  Thus, "the

3    trade secret claimant need not particularize how the alleged secret differs from matters

4    already known to skilled persons in the field" unless its identification is "inadequate to

5    permit the defendant to discern the boundaries of the trade secret so as to prepare

6    available defenses, or to permit the court to understand the identification so as to craft

7    discovery." <u>Id.</u> at 143.

8        Here, the TAC identifies the "trade secrets" as the "recipes by which Gatan

9    constructs the Enfinium's magnetic optics," including: (1) "the many magnetic lenses and

10   their exact mechanical and electrical design and placement"; (2) "the shape of the

11   electron trajectories through the spectrometer"; (3) "the number and location of the

12   various electron-optical crossovers"; (4) "the exact way Gatan corrects the many

13   electron-optical aberrations encountered in EEL spectrometers"; and (5) "the fine details

14   of the resulting electron-optical performance."  TAC ¶ 22.  More details about these

15   alleged trade secrets are given in subsequent paragraphs.  TAC ¶¶ 23–34.

16       Essentially, the TAC claims that the precise way that the Enfinium's lenses focus

17   the electrons (i.e., placement of lenses, crossovers, electron trajectories) and correct for

18   aberrations (i.e., lens settings, performance) is a trade secret.  Although the TAC could

19   be clearer about the "boundaries" of the alleged trade secrets, CUTSA does not require

20   that the party alleging misappropriation "define every minute detail of its claimed trade

21   secret at the outset of the litigation." <u>Advanced Modular</u>, 132 Cal. App. 4th at 835.  The

22   court thus finds the TAC contains "reasonable" detail—enough to permit Nion to prepare

23   a defense and for the court to craft limits on discovery.  Cf. <u>TMX Funding, Inc. v. Impero</u>

24   <u>Techs., Inc.</u>, No. C 10-00202 JF (PVT), 2010 WL 2509979, at *3 (N.D. Cal. June 17,

25   2010).  At the pleading stage, that is all that California law requires.

26       **ii.    Other Elements**

27       Nion also argues that the TAC does not plausibly plead all of the other elements of

28   a trade secret claim.  To state a claim for trade secret misappropriation, the plaintiff must

United States District Court
Northern District of California

allege that "(1) the plaintiff owned a trade secret, (2) the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means, and (3) the defendant's actions damaged the plaintiff."  Sargent Fletcher, Inc. v. Able Corp., 110 Cal. App. 4th 1658, 1665 (2003).  In its motion, Nion challenges whether Gatan's alleged confidential information meets the definition of a "trade secret" and whether the second element of misappropriation is sufficiently alleged.

A "trade secret " is defined as information that (1) derives independent economic value from not being generally known to the public; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.  Cal. Civ. Code § 3426.1.  Nion argues that Gatan has not pleaded that its alleged trade secrets have "independent economic value" and are kept secret by "reasonable" efforts.  As to economic value, Gatan alleges that Nion used its trade secrets to "bypass years of costly research and development", win a $1.1 million grant, and compete with Gatan in the spectrometer market.  TAC ¶¶ 4–6.  As to secrecy efforts, Gatan alleges that it stored its information on password-protected computers, limited employee access on a "need to know" basis, and required employees and contractors to sign non-disclosure agreements. TAC ¶ 48.  Moreover, Gatan required Nion to sign a non-disclosure agreement and agree to paragraphs 12–14 of the Agreement.  TAC ¶¶ 20–21.  The court finds that these allegations are sufficient to meet Rule 8's standards.

Finally, Nion argues that Gatan has not sufficiently pleaded misappropriation. "Misappropriation" is defined in relevant part as "[d]isclosure or use of a trade secret of another without express or implied consent" by a person who:

(A) Used improper means to acquire knowledge of the trade secret; or

(B) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was:

. . .

(ii) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

(iii) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use;  . . . .

Cal. Civ. Code § 3426.1(b)(2).  "Improper means" includes "breach or inducement of a breach of a duty to maintain secrecy."  Id. § 3426.1(a).

Here, because Nion was subject to the restrictions of the Agreement, Gatan alleges that Nion had "a contractual duty to maintain the confidentiality of Gatan's trade secrets."  TAC ¶ 50.  Gatan further alleges that Nion "disclosed" its trade secrets "to the government" and "used [the trade secrets] to develop its own spectrometer."  TAC ¶¶ 54, 56.  "Use" misappropriation includes situations where the defendant "built upon or modified" the trade secret before disclosure.  SkinMedica, Inc. v. Histogen Inc., 869 F. Supp. 2d 1176, 1197 (S.D. Cal. 2012).  Gatan has so alleged, see TAC ¶¶ 45, 50, 54, and therefore adequately pleaded misappropriation.

In summary, the court finds that Gatan has identified the alleged trade secrets with "reasonable particularity" and that the other elements of the trade secret claim are plausibly alleged.  Nion's motion to dismiss the trade secret claim is therefore DENIED.

### 2.      The Contract Claims

Nion also challenges the TAC's claims for breach of contract, arguing that the paragraphs of the Agreement relied on by Gatan are invalid under section 16600.

#### i.      Breach of Paragraphs 12–14 of the Agreement

Section 16600 provides that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."  Cal. Bus. & Prof. Code § 16600.  Nion argues that paragraph 13 is void as an "extremely broad non-compete . . . not remotely limited to trade secrets."  Mot. at 20.  Gatan responds that paragraph 13 does not restrain competition, but only prohibits Nion from "disclosing or using" confidential information.

Paragraph 13 contains several operative prohibitions.  The first sentence provides that Nion "shall not . . . directly or indirectly disclose or use" any "Confidential Information" as defined in paragraph 12.  TAC Ex. A at 3.  The third sentence provides that Nion "will

1    not directly or indirectly create any products . . . sold . . . by Gatan" or "otherwise use any

2    Confidential Information." Id. Although this latter sentence more clearly restrains

3    competition, Gatan does not appear to rely upon this part of paragraph 13.  The TAC

4    quotes only the first part of paragraph 13, TAC ¶ 68, and alleges that Nion breached it by

5    "using, divulging, adapting, or disclosing Gatan's trade secrets."  TAC ¶ 70.

6           As a general matter, under California law, "agreements designed to protect an

7    employer's proprietary information do not violate section 16600." Fowler v. Varian

8    Assocs., Inc., 196 Cal. App. 3d 34, 44 (1987).  Provisions "necessary to protect an

9    employer's trade secret" are therefore enforceable despite section 16600. Asset Mktg.

10   Sys., Inc. v. Gagnon, 542 F.3d 748, 758 (9th Cir. 2008); see also Latona v. Aetna U.S.

11   Healthcare Inc., 82 F. Supp. 2d 1089, 1096 (C.D. Cal. 1999) ("[R]estrictions that serve to

12   protect a former employer's trade secrets, proprietary information, and confidential

13   information are valid in California.").  There is no reason that the logic of these decisions

14   would be restricted to the employer-employee context.  Thus, so long as paragraph 13 is

15   "necessary" to protect confidential information, it is valid despite section 16600.

16          However, Nion argues that paragraphs 12 and 13 are written too broadly, relying

17   on Dowell v. Biosense Webster, Inc., 179 Cal. App. 4th 564 (2009). Dowell involved an

18   employer's "Secrecy, Non-Competition and Non-Solicitation Agreement." Id. at 567.  In

19   relevant part, the agreement prohibited former employees from "rendering services,

20   directly or indirectly, to any competitor in which the services they may provide could

21   enhance the use or marketability of a conflicting product by application of confidential

22   information to which the employees had access during employment." Id. at 575.

23   "Confidential Information" was defined as information to which the employee had access

24   that was "not generally known to the trade or industry." Id. at 568.  The California Court

25   of Appeal invalidated this provision under section 16600, finding that the "clauses in the

26   agreements are not narrowly tailored or carefully limited to the protection of trade secrets,

27   but are so broadly worded as to restrain competition." Id. at 577.  "Given such an

28   inclusive and broad list of confidential information, it seems nearly impossible that

United States District Court
Northern District of California

12

United States District Court
Northern District of California

1    employees . . . who worked directly with customers, would not have possession of such

2    information."  Id.

3         Paragraph 12 does define "Confidential Information" broadly, but its breadth is

4    mostly a list of the different forms that confidential information can take.  The definition

5    remains limited, somewhat circularly, to "confidential and/or proprietary information."

6    TAC Ex. at 3.  Moreover, Gatan does not seek to restrict the use of any information that

7    Nion acquired during the Agreement; the TAC only alleges a breach of paragraph 13 as

8    to "trade secrets" and "confidential information."  TAC ¶¶ 68, 70–71.  Thus, although

9    other aspects of paragraph 13 might be unenforceable, the basis of Gatan's second claim

10   is the prohibition on the use and disclosure of confidential information, which is

11   permissible in California.  See Allied N. Am. Ins. Brokerage Corp. of Cal. v. Woodruff-

12   Sawyer, No. C 04-2527 MJJ, 2005 WL 6583937, at *8 (N.D. Cal. Feb. 22, 2005)

13   ("[S]ection 16600 does not void contractual provisions that restrict a former employee

14   from using or disclosing a former employer's confidential or proprietary information.").

15   The court therefore declines to dismiss the claim for breach of paragraphs 12–14 of the

16   Agreement on the basis of section 16600.

17              **ii.    Breach of Paragraph 15 of the Agreement**

18        Gatan's final argument asserts that the TAC's third and fourth claims must be

19   dismissed because paragraph 15 is unenforceable under section 16600.   This argument

20   fails because paragraph 15 does not actually restrain competition.  This provision only

21   requires that Nion grant Gatan a "non-exclusive" license.  TAC Ex. A at 4.  Even after the

22   grant of the license, Nion and Gatan both remain free to compete against each other in

23   the spectrometer market.

24        Nion's contrary argument primarily relies on Applied Materials, Inc. v. Advanced

25   Micro-Fabrication Equipment Company, 630 F. Supp. 2d 1084 (N.D. Cal. 2009), but that

26   case is clearly distinguishable.  The contract in Applied Materials required employees to

27   assign any patent to their former employer for one year after the employment relationship

28   ended.  See 630 F. Supp. 2d at 1090.  That provision reached "any invention disclosed

13

United States District Court
Northern District of California

by former employees, regardless of when or where they were conceived." Id. Here, in contrast, paragraph 15 requires only a license, not an assignment, and is limited to "developments" "arising out of the incorporation of [Gatan's] Products into [Nion's] systems." TAC Ex. A at 3–4.

Nion claims that paragraph 15 requires it to license "any idea that Nion . . . conceives, simply as a result of installing a Gatan spectrometer." Mot. at 24. However, the actual contractual language is not so broad. Paragraph 15 only reaches developments "arising out of the incorporation" of Gatan's spectrometer into Nion's systems. A natural reading of the "arise out of" limitation is that the covered developments must be the result of confidential information acquired during the collaboration contemplated in the Agreement. Developments that Nion conceived independently would not be covered by the "Developments" license.

Finally, Nion argues that paragraph 15 must be read "in tandem" with paragraph 16. Taken together, Nion claims that these contractual provisions require it to first license its innovations to Gatan, and then subsequently be forced to buy them from Gatan per paragraph 16. This argument fails for the simple reason that this court has already held that paragraph 16 is unenforceable under section 16660. Dkt. 55 at 6.

### 3.   The Motion to File Under Seal and Request for Judicial Notice

Nion's request for judicial notice ("RJN") asks the court to take notice of (1) patents registered by Gatan bearing Krivanek's name as an inventor, Def.'s RJN at Exs. A–E; and (2) publicly available pages from Gatan's website, id. Exs. F–K. Nion uses the patents as evidence tending to show that Nion had the expertise to develop its own spectrometer without relying on Gatan's alleged "trade secrets." Nion uses the webpages to show that Gatan's website states that the Quantum performs "aberration correction up to the fifth order." Id. Ex. F at 2.

The court will GRANT the RJN because these documents are properly the subject of judicial notice. However, the court cannot make the improper factual inferences that the Nion urges on the basis of these documents. The patents do indeed list Krivanek as

14

United States District Court
Northern District of California

an inventor, and the court may take notice of that, but it is improper to ask the court to infer from this that Nion's invention of its competing spectrometer was independent of Gatan's trade secrets.  This is not a summary judgment motion.  For purposes of a motion to dismiss, the court must take Gatan's allegation that "Nion could not have developed its own spectrometer from scratch" as true.  TAC ¶ 71.

Nion has also filed an administrative motion for leave to file under seal, seeking to make five minor redactions to its motion and RJN.  Dkt. 120.  Gatan has not responded to or opposed this motion.  Because the court has already granted leave to make substantially identical redactions, this motion was not necessary.  See Dkt. 118. However, the documents submitted with Nion's RJN reveal that the fact that the Quantum performs "[a]berration correction up to the fifth order" is advertised on Gatan's website. Def.'s RJN Ex. G at 2.  Since this information is public, there is no longer good cause to redact the term "partial fifth order aberration correction."  Nion's motion for leave to file under seal is therefore DENIED as to this phrase.

### CONCLUSION

For the foregoing reasons, Nion's motion to dismiss is DENIED.  Nion's motion to file under seal is GRANTED IN PART and DENIED IN PART.  Within 14 days of the date of this order, Nion shall refile its motion papers with no redaction of the language regarding "fifth order aberration correction."

The court will hold a further case management conference in this matter on **April 20, 2017**, at 2:00 p.m. in Courtroom 3, 3rd Floor, Federal Building, 1301 Clay Street, Oakland, California.  The parties shall file a joint case management statement no later than 7 days prior to the conference.

**IT IS SO ORDERED.**

Dated:  March 31, 2017

_____
PHYLLIS J. HAMILTON
United States District Judge