UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GATAN, INC.,<br><br>    Plaintiff,<br><br>  v.<br><br>NION COMPANY,<br><br>    Defendant. | Case No. 15-cv-01862-PJH<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS**<br><br>Re: Dkt. No. 140 |

  Before the court is plaintiff Gatan Inc.'s motion to dismiss defendant Nion Company's counterclaims. The matter is fully briefed and suitable for decision without oral argument. Accordingly, the hearing set for August 16, 2017 is VACATED. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby DENIES the motion for the following reasons.

## BACKGROUND

**A. Factual and Procedural Background**

  This case concerns electron microscopes, which allow imaging at a much higher resolution than light-based microscopes. Plaintiff Gatan, Inc. ("Gatan") is a manufacturer of components used in electron microscopes, including electron energy-loss ("EEL") spectrometers. Defendant Nion Company ("Nion") is an electron microscope manufacturer ("EMM"). Historically, Nion did not manufacture its own spectrometers, but instead would buy spectrometers from Gatan.

  The dispute centers on a February 2010 Agreement between Gatan and Nion (the "Agreement"). Gatan accuses Nion of misusing confidential information divulged under the terms of the Agreement to develop its own competing spectrometer. Nion claims that it developed its spectrometer independently, and accuses Gatan of using contracts like

the Reseller Agreement to monopolize, attempt to monopolize, or otherwise restrain competition in the EEL spectrometer market.

Although it is still in the pleading stage, the case has an extensive procedural history. The court has ruled on several motions to dismiss and a motion for leave to file a third amended complaint ("TAC"). See Dkt. 33, 55, 106, 128. Among other things, the court ruled in these orders that paragraph 16 of the Agreement, upon which Gatan formerly relied, was an unenforceable non-compete clause prohibited by California Business and Professions Code section 16600. Gatan's operative TAC brings claims for misappropriation of trade secrets and breach of contract.

On April 14, 2017, Nion filed its answer to the TAC. Dkt. 133. Nion's answer asserts seven counterclaims, alleging anticompetitive behavior by Gatan. Gatan now moves to dismiss all of Nion's counterclaims. Dkt. 140.

**B.    Nion's Counterclaims**

Nion's counterclaims allege that Gatan engaged in a "bad faith attempt to drive its smaller and more innovative competitor out of the market." Countercl. ¶ 1. Specifically, Gatan allegedly exploited its dominant position in the EEL spectrometer market to "unilaterally impose" the Agreement on Nion, wrongfully sought to enforce an illegal non-compete clause, and now asserts a "baseless" trade secret claim in bad faith, seeking to stifle competition. Id. Nion alleges that Gatan has imposed contracts similar to the Agreement on other EMMs, to prevent them from entering the market and ensure that Gatan "continues to dominate the market for EEL spectrometers." Countercl. ¶ 2.

Gatan manufactures components and software used in electron microscopes, but it is not itself an EMM. Countercl. ¶ 18–20. EEL spectrometers are a component of electron microscopes that are sold "in a global market." Countercl. ¶¶ 19–20. Both the monochromator and spectrometer of an electron microscope work together to determine the overall resolution of the microscope. Countercl. ¶ 24.

Nion alleges that Gatan has "a dominant position in the market for EEL spectrometers" because it is "the sole source of EEL spectrometers for EMMs."

Countercl. ¶ 26. Only a few EEMs—Gatan, Hitachi, JEOL, Zeiss, and "very recently" Nion—offer EEL spectrometers. However, no EMM will sell spectrometers for use in a competitor's microscope. Nion alleges that Gatan has agreements with Hitachi and JEOL that prevent them from making their own spectrometers. Countercl. ¶ 28. Zeiss does offer spectrometers for sale, but only for use in its own microscopes. Countercl. ¶ 30. Thus, in 2010, "Gatan was the only EEL spectrometer manufacturer that sold spectrometers to EMMs." Countercl. ¶ 31.

On Nion's account, Gatan only entered the spectrometer marketplace in the 1980s because of Dr. Ondrej Krivanek, Nion's co-founder and a former Gatan employee. Countercl. ¶¶ 34, 38. While at Gatan, Krivanek made several innovations to spectrometer design, and is the sole inventor on a number of Gatan's patents, which protected these inventions but expired in 2005 and 2006. Countercl. ¶¶ 39–45.

In 1995, Krivanek left Gatan to work with Dr. Niklas Delby at Cavendish Laboratory in the UK. Countercl. ¶ 49. In 1997, the pair demonstrated the first-ever operational aberration corrector in electron microscopy, published their findings, and moved to Seattle to form Nion and commercialize the invention. Countercl. ¶¶ 51–52. By 2008, Nion delivered its first complete electron microscope and introduced a new monochromator design. Countercl. ¶¶ 57–60.

An advanced monochromator is "largely useless" unless it is paired with a high-performance spectrometer. Countercl. ¶ 64. Between 2003 and February 2010, Nion used Gatan spectrometers in its microscopes. Countercl. ¶ 66. In 2009, when Nion sought to order its next spectrometer, Gatan refused to deal unless Nion signed the Agreement. Countercl. ¶ 73. Because Gatan was the "only possible source of spectrometers," Nion had "no choice but to sign the Reseller Agreement," which Gatan itself described as a "non-compete agreement." Countercl. ¶¶ 74–75, 77, 86.

Nion alleges that the Agreement is part of an anticompetitive pattern by Gatan, who uses "similar or more restrictive non-competition clause[s] in agreements with other EMMs." Countercl. ¶ 94. Gatan relies on these illegal contractual provisions to "broaden

its patents' duration and scope and to cement its monopoly position" in the EEL spectrometer market, even though its patents have expired. Countercl. ¶ 97.

Gatan further uses "restrictive pricing" to maintain/exploit its monopoly position. For example, prior to 2010, Nion bought spectrometers from Gatan for about $170,000; after 2010, Gatan's price to Nion was $400,000, and the "list price" has now risen to around $700,000. Countercl. ¶¶ 97–100.

Gatan has also "refused to deal" with Nion. In April 2014, Nion tried to order a spectrometer from Gatan for a microscope that Nion was to deliver to Trinity College Dublin ("TCD"). Countercl. ¶ 104–05. Gatan did not respond to this request for months, and then told Nion that TCD would have to order a spectrometer directly from Gatan. Countercl. ¶ 107. On April 24, 2015—a year after the initial request and the very same day that Gatan filed this suit—Gatan finally agreed to sell to Nion. Countercl. ¶ 113.

Lastly, Gatan has used lawsuits and the threat of lawsuits to stifle competition. Paragraph 16 of the Agreement—which this court has held to be unenforceable—was used to threaten suit against Nion and had a "chilling effect" on Nion's development of a competing spectrometer. Nion claims that the instant suit is a "bad faith effort to keep Nion embroiled in needless litigation." Contrary to the TAC's trade secret allegations, Nion alleges that "Gatan never delivered a partially assembled or untested spectrometer to Nion" and that Nion reached the desired resolution "on its own, without any Gatan employee involved." Countercl. ¶¶ 126–27.

Nion alleges that Gatan's restrictive practices—the non-compete agreements, discriminatory pricing, refusals to deal, and bad faith litigation—operate to prevent competition in the EEL spectrometer market. Nion asserts seven counterclaims:

**(1) The UCL Claim**. Nion alleges that Gatan's use of an illegal non-compete clause (paragraph 16 of the Agreement) is an unfair and/or unlawful business practice in violation of Cal. Bus. and Prof. Code § 17200.

**(2) Sherman Act Section 1.** Nion alleges that Gatan has entered into "agreements . . . in restraint of trade," including conditions "designed to make [Gatan] the only available source of spectrometers."

4

**(3) "Attempted Monopolization" in Violation of Sherman Act Section 2.**  Nion alleges that Gatan has engaged in "predatory and anticompetitive" practices and has "a dangerous probability of achieving monopoly power."

**(4) "Monopolization" in Violation of Sherman Act Section 2.**  Nion alleges Gatan has "achieved monopoly power" through "restrictive practices with the specific intent to monopolize the global market for the sale of EEL spectrometers to EMMs."

**(5) <u>Walker Process</u> Claim**.  Nion alleges that Gatan brought this trade secret suit in bad faith, "with the knowledge that Nion did not misappropriate any actual trade secrets and in furtherance of its unlawful scheme to attempt to monopolize."

**(6) Cartwright Act Claim.**  Nion alleges that Gatan violated Cal. Bus. and Prof. Code § 16700 <u>et seq.</u> because Gatan had entered into unlawful agreements in restraint of trade to restrict competition in the EEL spectrometer market.

**(7) Breach of Implied Covenant of Good Faith and Fair Dealing (the "bad faith" claim).**  Nion alleges that Gatan breached the Agreement when it refused to deal with Nion, presumably referring to the TCD incident.

## DISCUSSION

**A.      Legal Standard**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in a pleading.  <u>Ileto v. Glock, Inc.</u>, 349 F.3d 1191, 1199–1200 (9th Cir. 2003).  To survive a motion to dismiss for failure to state a claim, a pleading generally must satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8, which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

A claim may be dismissed under Rule 12(b)(6) if the pleader fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory.  <u>Somers v. Apple, Inc</u>., 729 F.3d 953, 959 (9th Cir. 2013).  While the court is to accept as true all the factual allegations in the pleading, legally conclusory statements, not supported by actual factual allegations, need not be accepted.  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678–79 (2009).

The allegations "must be enough to raise a right to relief above the speculative level", and a motion to dismiss should be granted if the pleader does not proffer enough

5

facts to state a claim for relief that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 558–59 (2007) (citations and quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Id. at 679.

**B.     Analysis**

Gatan's motion argues that all of Nion's counterclaims must be dismissed for failure to state a claim. Gatan presents seven different arguments for dismissal, asserting that (1) Nion lacks standing to make a UCL claim; (2) Nion has not alleged any fraud on the patent office to support its Walker Process claim; and (3) Gatan did not breach the Agreement because the contract was terminated in June 2014, prior to the alleged breach. Grouping the remaining antitrust counterclaims (the second, third, fourth, and sixth claims) together, Gatan further argues that (4) claims 2, 3, and 4 fail to sufficiently allege the relevant market or Gatan's market power; (5) claims 2 and 6 fail to identify "any agreement" in restraint of trade; and that (6) claims 2, 3, and 4 fail to allege an antitrust injury or (7) an unreasonable restraint of trade.

Gatan's arguments regarding the UCL claim and the bad faith claim can be dismissed quickly. Nion has alleged several injuries to support standing under the UCL, including litigation costs in defending against Gatan's paragraph 16 claim and paying supracompetitive prices for spectrometers. Countercl. ¶¶ 145, 147, 149; see also Dowell v. Biosense Webster, Inc., 179 Cal. App. 4th 564, 575 (2009) (use of illegal non-competes violates UCL). As to the bad faith claim, the counterclaims clearly allege that Gatan's breach began in April 2014. Countercl. ¶ 105. Thus, even presuming that the Agreement did "self-terminate" in June 2014, Nion alleges that Gatan was already in breach at that time due to its refusal to deal with Nion.

Gatan's motion misunderstands Nion's <u>Walker Process</u> counterclaim. In <u>Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.</u>, 382 U.S. 172 (1965), the Supreme Court held that the enforcement of a patent obtained by fraud could constitute a violation of the Sherman Act. <u>Id.</u> at 174. However, Nion's counterclaim is not based on a fraudulently-procured patent, but instead on bad faith, anticompetitive trade secret litigation. The Ninth Circuit and other courts have recognized this more general type of <u>Walker Process</u> claim: "It is well established as a matter of antitrust law that the use of baseless litigation to drive out competition can amount to an antitrust violation." See <u>Int'l Techs. Consultants, Inc. v. Pilkington PLC</u>, 137 F.3d 1382, 1390 (9th Cir. 1998) (citing <u>CVD, Inc. v. Raytheon Co.</u>, 769 F.2d 842 (1st Cir. 1985)). <u>CVD</u> analogized to <u>Walker Process</u> to hold that "the assertion in bad faith of trade secret claims, that is, with the knowledge that no trade secrets exist, for the purpose of restraining competition . . . can be a violation of the antitrust laws." 769 F.2d at 851. In reply, Gatan appears to acknowledge that this type of claim is cognizable, but argues that Nion does not allege that its trade secrets suit is "objectively meritless." In fact, Nion alleges that the suit is "objectively baseless" and that "Gatan asserted this cause of action in bad faith, with the knowledge that Nion did not misappropriate any actual trade secrets." Countercl. ¶ 183. Taking these allegations as true, Nion has stated a <u>Walker Process</u> claim.

As to the remaining antitrust claims, Gatan's arguments ignore the actual allegations in the counter-complaint. First, Nion has alleged a relevant market and Gatan's market power. Allegation of the relevant market requires identification of "a product market and a geographic market." <u>Newcal Indus., Inc. v. Ikon Office Solution</u>, 513 F.3d 1038, 1045 n.4 (9th Cir. 2008). Nion's allegations identify the product (EEL spectrometers) and the geographical scope (global), and allege that Gatan has a "dominant" position in the market because it is "the sole source of EEL spectrometers" for EMMs. See Countercl. ¶¶ 21–31.

Second, Gatan's argument that Nion fails to identify an "agreement in restraint of trade" is perplexing. The counter-complaint is quite clear that the Reseller Agreement

7

(and "similar" agreements with other EEMs) is the agreement that Nion complains of. The Reseller Agreement is specifically identified, and its terms, parties, and date of signing are alleged. No more specificity is needed.

It is true that Nion does not offer the same level of detail on the alleged "similar or more restrictive" non-compete agreements between Gatan and other EMMs. However, Twombly contemplates that the plaintiff may not have a copy of the agreement prior to the filing of an antitrust suit, and need only plead facts that "raise a reasonable expectation that discovery will reveal evidence of illegal agreement." Twombly, 550 U.S. at 556. Here, the counterclaims describe one agreement in detail (the Reseller Agreement), and allege that Gatan's CEO admitted that Gatan had similar restrictive contracts with other EMMs. Countercl. ¶ 94. Moreover, Nion has identified the parties to the other alleged agreements, and their general content (a non-compete clause similar to paragraph 16). Countercl. ¶¶ 28–29. The court finds that these allegations meet Twombly's standards.

Finally, Nion has alleged that the agreements restrained competition and caused an antitrust injury. Because Nion was both a customer and a potential competitor of Gatan, it is not clear at this stage whether the Agreement should be considered a vertical or horizontal restraint. Cf. Leegin Creative Leather Products v. PSKS, 551 U.S. 877 (2007). But the court need not decide whether the rule of reason applies to the Agreement, or weigh its pro- and anti-competitive effects, at the pleading stage. In re High-Tech Employee Antitrust Litig., 856 F. Supp. 2d 1103, 1122 (N.D. Cal. 2012). It is enough that Nion plausibly alleges that the Agreement restrains trade, and a potential competitor's promise not to make a competing product limits competition. Finally, Nion has alleged an antitrust injury because it pleads that Gatan used its monopoly power to charge supracompetitive prices to EMMs, and that Nion paid an inflated price for the spectrometer. See Countercl. ¶¶ 97–103, 135–140.

///

///

**CONCLUSION**

For the foregoing reasons, Gatan's motion to dismiss Nion's counterclaims is DENIED. The court shall conduct a further case management conference on September 21, 2017, at 2:00 p.m. in Courtroom 3, 1301 Clay Street, Oakland, California. The parties shall file a joint case management statement not less than seven days prior to the conference.

**IT IS SO ORDERED.**

Dated: August 14, 2017

_____
PHYLLIS J. HAMILTON
United States District Judge