April 18, 2018

U.S. District Court for the Northern District of California
Oakland Courthouse
1301 Clay Street, Oakland, CA 94612

Re:   *Gatan, Inc. v. Nion Company*, Case No. 15-cv-01862-PJH

Dear Judge Hamilton, Judge Ryu, or Judge Westmore:

Pursuant to the Court's Case Management and Pretrial Order (Dkt. 159), defendant and counterplaintiff Nion Company ("Nion") and plaintiff and counterdefendant Gatan, Inc. ("Gatan") submit this joint letter brief and request that the Court resolve a dispute regarding Gatan's disclosure of its trade secrets pursuant to California Code of Civil Procedure section 2019.210. In sum, Gatan believes the Court's Order, dated March 31, 2017 (Dkt. 128), determined that it had reasonably identified its trade secrets with sufficient detail enough to permit the Court to craft limits on discovery consistent with section 2019.210; Nion does not believe the Court's order evaluated Gatan's section 2019.210 disclosure, because it had not yet been made, and believes the current disclosure lacks the legally required detail. The parties met and conferred but reached an impasse. Gatan believes this Court has already decided the issue and requests that Judge Hamilton resolve the matter; Nion believes this is a discovery dispute that any of the judges could resolve.

## SUMMARY OF DISPUTE

On February 21, 2018, shortly after being retained, Nion's counsel requested that Gatan identify the trade secrets at issue consistent with Cal. Civ. Proc. § 2019.210. Gatan advised that it believed Judge Hamilton had already found that Gatan sufficiently identified the trade secrets at issue in the Third Amended Complaint ("TAC") when it ruled on Nion's motion to dismiss (*Id.*; Dkt. 128 at 9:21-23). Nion stated that courts in the Northern District of California generally require section 2019.210 disclosure statements and, on March 5, 2018, Gatan provided one but maintained its position that Judge Hamilton had already decided the issue (Ex. A.). On March 6, 2018, Nion informed Gatan that it believed the trade secret disclosure was insufficient under section 2019.210. To facilitate the amendment of Gatan's disclosure, Nion voluntarily produced a copy of its spectrometer design (Ex. B). Gatan reviewed the document and determined amendment was not needed in light of the allegations in the TAC, namely that Nion misappropriated Gatan's trade secrets in support of its SBIR application (TAC ¶¶ 41-43.) Nion now seeks an order compelling Gatan to provide a supplemental trade secret disclosure.

The questions for the Court are: (1) Did Judge Hamilton's order (Dkt. 128) on Nion's motion to dismiss determine that Gatan sufficiently identified the trade secrets at issue to allow the Court to craft limits on discovery consistent with Cal. Civ. Proc. Code § 2019.210? (2) Does Exhibit A satisfy Gatan's current section 2019.210 requirements?

### I.   NION'S POSITION STATEMENT

Gatan's trade secret disclosure falls far short of the detailed statement required by section 2019.210; instead, it largely repeats the allegations in its publicly-available version of the TAC

while also omitting the details explicitly cited by Judge Hamilton in her ruling on its trade secrets allegations. (*Compare* Ex. A to Dkt. 128 at 9.) Section 2019.210 was designed to make parties clearly define their trade secrets pre-discovery, with more detail than what is required at the pleading stage, not less. *Brescia v. Angelin*, 90 Cal. Rptr. 3d 842, 848 (Cal. Ct. App. 2009) (stating statute's goals). Gatan's disclosure is overbroad and vague, suggesting almost anything touching on spectrometer design is a trade secret. However, they now admit this is not the case. During the meet and confer process, Nion provided Gatan with a copy of its final spectrometer design (Ex. B). Gatan—for the first time—suggests below that Nion's final spectrometer design is largely irrelevant. Gatan's disclosure must include enough detail regarding its alleged trade secrets to make this clear so, among other things, the Court can limit discovery appropriately. Gatan states it is focusing its allegations on a grant application by Nion; its section 2019.210 disclosure should be amended accordingly. These disclosures are often amended during litigation to include more detail, despite Gatan's contrary claims. Because Gatan's disclosure fails to satisfy the statutory requirements, Nion asks the Court to compel an adequate disclosure of the alleged trade secrets.

**A. Gatan's Disclosure Fails to Identify its Trade Secrets with the Reasonable Particularity Required During Discovery.**

A plaintiff complies with section 2019.210 only when it "distinguish[es] [its] claimed trade secrets from matters generally known to those skilled in the trade." *I-Flow Corp. v. Apex Med. Techs., Inc.*, No. 07-cv-1200-DMS-NLS, 2008 WL 2233962, at *3 (S.D. Cal. May 23, 2008). In a highly technical field—like spectrometer design—a more rigorous level of detail is required. "[W]here alleged trade secrets 'consist of incremental variations on, or advances in the state of the art in a highly specialized technical field, a more exacting level of particularity may be required to distinguish the alleged trade secrets from matters already known to persons skilled in that field." *Loop AI Labs Inc. v. Gatti*, 195 F. Supp. 3d 1107, 1112 (N.D. Cal. 2016) (internal citations omitted). A plaintiff fails to satisfy this standard when it uses broad, "catch-all" language as "a tactic to preserve an unrestricted, unilateral right to subsequently amend its trade secret statement." *Perlan Therapeutics, Inc. v. Superior Court*, 101 Cal. Rptr. 3d 211, 226 (Cal. Ct. App. 2009).

In *Advanced Modular Sputtering, Inc. v. Superior Court*, the court held that a plaintiff met the section 2019.210 requirements by identifying the purported trade secrets, describing their features, and describing "how it believe[d] the ... features distinguish the alleged trade secrets from … matters within the general knowledge of persons in the [] industry." 33 Cal. Rptr. 3d 901, 908 (Cal. Ct. App. 2005). Likewise, in *Gabriel Technologies Corp.*, No. 08-cv-1992-AJB-MDD, 2012 WL 849167, at *3 & n.5 (S.D. Cal. March 13, 2012), the court found a trade secret disclosure insufficient when it "failed to describe the configuration or essential programming of the components and sub-components and failed to describe the nature of the communications between the components involved in their trade secret." Courts have also found disclosures insufficient when, as here, they merely mirror the public complaint. *See Loop AI Labs*, 195 F. Supp. 3d at 1112 (public disclosure belies secrecy); *Perlan Therapeutics, Inc.*, 101 Cal. Rptr. 3d at 216 (same).[1]

Gatan's trade secret disclosure is overly broad and vague: "[d]etails on noise characteristics

---

[1] While Gatan filed a sealed version of the TAC, the redactions are limited and none appear in the section 2019.210 disclosure, which contains publicly available information. (Dkt 115; *see also* Dkt 115-3 (Ex. 3 to TAC)). In fact, Gatan's disclosure lists alleged trade secrets broader than those considered by the Court in its Order. (*Compare* Ex. A to Dkt. 128 at 9.)

of the electronics contained in various iterations of Gatan lens cards," without describing the details;"[n]on-standard control to more finely control and study the Enfinium's optical performance," without defining "non-standard;" "[c]alculation of creepage distances and detail on the Quantum prism coil design," without explaining which calculations or details; and so on (Ex. A). Many of these purported trade secrets are non-exclusive and assert broad and unspecified categories of information—such as "details on" and "calculation of"—without delineating any limits. (*Id.*) This type of "categorical" disclosure was insufficient in *Bresica* and is insufficient here. "The Ninth Circuit has rejected the use of 'catchall' language, holding that such language is insufficiently specific 'because it does not *clearly refer* to tangible trade secret material.'" *Loop AI Labs*, 195 F. Supp. 3d at 1115 (internal citations omitted; emphasis in original). Ultimately, Gatan's lack of specificity gives it the opportunity to contrive alleged trade secrets later in the litigation, depriving Neon of the opportunity to defend against the claims in the initial stages because it cannot know which "details" are the so-called trade secrets.

While Gatan's disclosure admits spectrometer design is complicated, it fails to disclose enough information for Nion to determine what parts of this technology Gatan is claiming as a trade secret. At present, the disclosure is so broad—referencing "design explanations" and "engineering drawings"—that it could include Exhibit B, which Gatan is now uninterested in. As in *Loop*, "[p]laintiff's use of technical language does not mask the fact that its descriptions fail to identify any 'confidential information' described therein." *Loop AI Labs*, 195 F. Supp. 3d at 1114. Gatan's disclosure must be sufficiently detailed such that it *only* includes items that might be actual trade secrets. *See Myrio Corp. v. Minerva Network Inc.*, 2001 U.S. Dist. LEXIS 10461, at *1-3 (N.D. Cal. April 4, 2001) (finding statement insufficient on this basis). Nion learned through this meet and confer process that Gatan is focusing its allegations on the SBIR application, not Nion's final design. Gatan should make this explicit in its section 2019.210 trade secret disclosure.

During the meet and confer process, Gatan also indicated it intends to use discovery to refine its disclosure. But this is precisely why the California legislature passed the statute—the law prohibits this type of fishing expedition. *Brescia*, 90 Cal. Rptr. 3d at 848. The trade secret disclosure is supposed to cement the plaintiff's allegations before discovery. Indeed, "[e]xperience has shown that it is easy to allege theft of trade secrets with vagueness, then take discovery into the defendants' files, and then cleverly specify whatever happens to be there as having been trade secrets stolen from plaintiff." *Jobscience, Inc. v. CV Partners, Inc.*, No. C 13-04519 WHA, 2014 WL 852477, at *5 (N.D. Cal. Feb. 28, 2014). For this reason, "[a] true trade secret plaintiff ought to be able to identify, up front, and with specificity the particulars of the trade secrets without any discovery." *Id.* Gatan has not done this.

## B. The Court's Ruling on the Motion to Dismiss Is Not Dispositive Here.

Gatan attempts to use the Court's Order on the motion to dismiss as a shield to avoid complying with section 2019.210. This is a misreading of the Court's Order and the law. Gatan is not exempt from complying with section 2019.210 because it survived a motion to dismiss. First, the Court's Order was necessarily limited to the pleading context—no section 2019.210 disclosure had been made yet. The Court held the TAC was sufficient "at the *pleading stage*" and noted the California Uniform Trade Secret Act ("CUTSA") "d[id] not require more *at the outset* of litigation." (Dkt. 128 at 9 (emphasis added).) Second, in its opposition to Nion's Motion to Dismiss the TAC, Gatan explicitly emphasized the difference between the particularity required when identifying trade secrets in a complaint versus prior to the commencement of discovery. (*See* Dkt. 124 at 3 ("California state courts and the Ninth Circuit recognize that CUTSA only requires

the claimant to submit [a description of the trade secrets with reasonable particularity] before discovery begins"); *see also Bryant v. Mattel, Inc.*, 573 F. Supp. 2d 1254, 1269 (C.D. Cal. 2007) (the "unambiguous language of the statute" indicates that the reasonable particularity requirement "*is related to discovery rather than related to pleading*.") (emphasis added).  Third, the Court's Order was explicit that the TAC "could be clearer about the 'boundaries' of the alleged trade secrets." (Dkt at 128 at 9.) This finding is critical in the highly technical field of EEL spectrometer design.  Gatan must define the boundaries of its alleged trade secrets before discovery begins.

Additionally, any claim by Gatan that Nion waived this argument because Nion's prior counsel did not raise the issue earlier is unsupported by law.  The courts consider the completeness of section 2019.210 disclosures through all phases of discovery.  The issue remains ripe for the Court's consideration.

In sum, Nion is entitled to a clear, detailed statement of Gatan's alleged trade secrets, including any relevant designs.  Allowing Gatan's current section 2019.210 disclosure to withstand amendment would let plaintiff trawl through all technical aspects of a competitor's product.  This is an extremely complex technology, as Gatan admits, and its overboard disclosure does not meet the required legal standards.  Therefore, Nion respectfully requests the Court order Gatan to provide a statement that contains the following: (1) a summary of the specific trade secrets at issue; (2) the background of the trade secrets and a description of how each trade secret has derived independent, actual or potential economic value by virtue of not being generally known to the public; (3) a description of how each secret has been the subject of reasonable efforts to maintain its secrecy; and (4) each of the precise claimed trade secrets, numbered, with a list of the specific elements for each, as claims would appear at the end of a patent.  *Openwave Messaging, Inc. v. Open-Xchange, Inc.*, No. 16-CV-00253-WHO, 2018 WL 692022, at *4 (N.D. Cal. Feb. 2, 2018).

## II.     GATAN'S POSITION STATEMENT

### A. This Court has already determined that Gatan's designation of trade secrets is sufficient for the Court to craft limits on discovery.

Gatan's position is straightforward: this Court has already resolved the issue. On March 31, 2017, Judge Hamilton entered an order denying Nion's motion to dismiss the TAC ("Order") (Dkt. 128).  In doing so, the Court specifically found that the TAC "contains 'reasonable' detail— ***enough to permit Nion to prepare a defense and for the court to craft limits on discovery***." (Dkt. 128 at 9:21-23) (emphasis added).  Simply because the Court made this determination at the pleading stage does not somehow render it premature.  In fact, at the December 14, 2017 case management conference, the Court did not craft discovery limits and Nion did not object at the conference nor did it object to the resulting case management and pretrial order.  Indeed, the case management and pretrial order contains a section for discovery limitations. (Dkt. 159).

### B. Nion's SBIR application is replete with references to Gatan and Gatan's spectrometer technology sufficient to allow Nion to engage in discovery.

Contrary to Nion's position, trade secret claimants are not required by section 2019.210 to particularize how the alleged secret differs from matters already known to skilled persons in the field, absent a showing that the stated details alone, without further explanation, are inadequate to permit the defendant to discern the boundaries of the trade secret so as to prepare available defenses, or to permit the court to understand the identification so as to craft discovery limits.

*Brescia v. Angelin*, 172 Cal.App.4th 133, 143 (2009).  Here, Nion has not yet made a showing that Gatan's identification of trade secrets is inadequate especially in light of the SBIR documents Nion has produced which show that Nion applied for and received a grant from the Department of Energy's SBIR program to develop a new spectrometer based on Gatan's trade secrets and technology. (TAC ¶¶ 3-4, 41-51). It is unclear why Nion argues that it cannot determine what the alleged trade secrets are nor can Nion plausibly deny that the trade secrets Gatan has identified are within the realm of trade secrets, especially when Nion designated similar information within its SBIR application as potential trade secrets.  (TAC, Ex. C at Nion-30-31, 46-50).

Tellingly, Nion's SBIR application requests to disqualify all grant application reviewers with links to Gatan. Such a request is evidence that Nion purposefully wanted to conceal the application from Gatan because Nion intended and admitted in the application that it was using Gatan's trade secrets to develop its spectrometers.  In later portions of the application, Nion argues the SBIR grant was necessary with the self-serving false statement that Gatan would not be willing to develop such an optimized spectrometer, directly and falsely arguing that the reviewers should award funding to Nion as the only option to move the industry forward.

That Nion has voluntarily produced a one page article broadly describing its spectrometer is of no import.  It is not dispositive whether Nion ultimately applied Gatan's trade secrets in their end product as the SBIR documentation clearly demonstrates that Nion used the trade secrets to, at the very least, secure funding in support of their development cycle.  Indeed, the 58 pages of the SBIR application and follow-up reports are replete with direct references to Gatan and admissions that Nion incorporated Gatan's spectrometer technology into its Phase I design and that Nion planned to further modify Gatan's technology to develop two additional spectrometers in Phase II. (TAC, Ex. B). Thus, Nion clearly has the information necessary to ascertain responsive material.

### C. **Gatan is not required to prove an element of its case at this stage of the litigation.**

Further, any argument that Gatan has a duty to show the information is not generally known to the public at this stage is misguided.  Such a showing is not required at the pre-discovery designation stage.  *See Perlan Therapeutics, Inc. v. Superior Court*, 178 Cal.App.4th 1333 (App. 4 Dist. 2009).  In *Perlan*, plaintiff was not required to prove in its trade secret statement that its alleged trade secrets were not generally known to the public.  Rather, this is an element of plaintiff's case that must be proven, but not at the pre-discovery stage of the action.  *Id*. at 1351 ("Perlan is *not* required to convince defendants or the court in its section 2019.210 statement that its alleged trade secrets are not generally known to the public.  This is an element of their case that must be proven, but not at the pre-discovery stage of the action.")

### D. **Nion has delayed raising this issue until after the Court set forth its discovery and case management schedule.**

Moreover, the appropriate time for Nion to have raised this issue would have been during discussions with the Court regarding an appropriate case management and discovery schedule at the December 14, 2017 case management conference.  Nion did not raise this issue, presumably because it was aware that the Court had already made a determination on this very issue. Accordingly, the Court set forth an appropriate discovery and case management schedule.  Nion did not object.  Notably, it was not until Nion brought in new counsel, months later, that it brought this issue to Gatan and now finally the Court.

April 18, 2018
Page 6

Respectfully submitted,

| | |
|---|---|
| */s/ Evangeline A.Z. Burbidge* | */s/ Matthew J. Vanis* |
| Evangeline A.Z. Burbidge | Matthew J. Vanis |
| Lewis & Llewellyn LLP | Shook Hardy & Bacon LLP |
| Counsel for defendant and counterplaintff, Nion Company | Counsel for plaintiff and counterdefendant Gatan, Inc. |

## **CERTIFICATION OF CONCURRENCE FROM ALL SIGNATORIES**

  I, Matthew Vanis, am the ECF user whose ID and password are being used to file this Letter Brief.  In compliance with N.D. Cal. Civ. L. R. 5-1(i)(3), I attest that I have obtained the concurrence of all signatories to this document.

Dated: April 18, 2018             <u>/s/ Matthew Vanis</u>
                     Matthew Vanis