UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GATAN, INC.,<br>　　　　Plaintiff,<br>　　v.<br>NION COMPANY,<br>　　　　Defendant. | Case No. 15-cv-01862-PJH<br><br>**ORDER RE PLAINTIFF'S TRADE SECRETS DESIGNATION**<br>Re: Dkt. No. 164 |

The court is in receipt of the parties' joint letter brief requesting the court to determine whether Gatan, Inc. has sufficiently identified its alleged trade secrets pursuant to Cal. Civ. Proc. Code § 2019.210. Specifically the parties ask the court to resolve two issues: (1) Did this court's order denying Nion Company's motion to dismiss, Dkt. 128 (the "MTD Order"), plaintiff's Third Amended Complaint (the "TAC") determine that Gatan sufficiently identified the alleged trade secrets consistent with § 2019.210? (2) Does Gatan's trade secrets designation, Dkt. 164-1 (Exhibit A), satisfy § 2019.210?

**BACKGROUND**

As the parties are familiar with the relevant facts and the MTD Order, the court only briefly describes them here. Gatan is a manufacturer of spectrometers, including the Enfinium (a.k.a. the "Quefina"), which is based on the technology of the GIF Quantum, an imaging energy filter. TAC ¶¶ 13–14. In the past, Nion did not market or sell its own spectrometers. TAC ¶ 15. In October 2009, Nion approached Gatan to collaborate on an electron microscope for Arizona State University ("ASU"). TAC ¶ 16. The parties' dispute centers on a February 2, 2010 "Reseller Agreement" between Gatan and Nion (the "Agreement"). Pursuant to the Agreement, the parties worked together to modify a

1  Gatan spectrometer for integration into a Nion microscope for ASU. Gatan accuses Nion
2  of breaching that contract and misusing confidential information divulged under the terms
3  of the Agreement.
4  California law requires that a party alleging trade secret misappropriation "identify
5  the trade secret with reasonable particularity" prior to discovery. Cal. Civ. Proc. Code
6  § 2019.210. Often, a trade secret plaintiff satisfies § 2019.210 by producing a trade
7  secrets designation before discovery commences. In response to defendant's request,
8  plaintiff did so on March 5, 2018. Though plaintiff complied with defendant's request,
9  plaintiff contends that it did not need to because the court's MTD Order already
10 determined that the TAC's allegations satisfied § 2019.210. After reviewing Gatan's
11 trade secrets designation, defendant informed Gatan that it believed the designation was
12 insufficient under § 2019.210 and produced its own spectrometer design to aid Gatan in
13 crafting an appropriately detailed designation. Gatan nevertheless determined that it
14 need not amend its designation in light of the TAC's allegations. Specifically, the TAC's
15 allegations that Nion misappropriated and disclosed Gatan's trade secrets through their
16 inclusion in Nion's Small Business Innovative Research ("SBIR") grant application.

**DISCUSSION**

**A.  Legal Standard**

"Section 2019.210 provides: In any action alleging the misappropriation of a trade secret under the Uniform Trade Secrets Act (Title 5 (commencing with Section 3426) of Part 1 of Division 4 of the Civil Code), before commencing discovery relating to the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable particularity subject to any orders that may be appropriate under Section 3426.5 of the Civil Code," which requires a court to take steps to protect trade secrets during litigation. Advanced Modular Sputtering, Inc. v. Superior Court, 132 Cal. App. 4th 826, 833 (2005).

A plaintiff seeking relief for the misappropriation of trade secrets "must identify the trade secrets and carry the burden of showing that they exist." MAI Sys. Corp. v. Peak

Computer, Inc., 991 F.2d 511, 522 (9th Cir. 1993). "While the Ninth Circuit has yet to decide whether Section 2019.210 of the California Code of Civil Procedure applies to actions in federal court, courts in this district have routinely applied the trade secret disclosure provisions in Section 2019.210." Openwave Messaging, Inc. v. Open-Xchange, Inc., No. 16-CV-00253-WHO, 2018 WL 692022, at *4 (N.D. Cal. Feb. 2, 2018) (collecting cases).

"The letter and spirit of section 2019.210 require the plaintiff, subject to an appropriate protective order, to identify or designate the trade secrets at issue with sufficient particularity to limit the permissible scope of discovery by distinguishing the trade secrets from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade." Advanced Modular, 132 Cal. App. 4th at 835 (internal quotation marks omitted; ellipses in original). Contrary to Nion's assertion, that does not require the designation itself to detail how the trade secret differs from matters of general knowledge in the trade. Instead, § 2019.210 "was intended to require the trade secret claimant to identify the alleged trade secret with adequate detail to allow the defendant to investigate how it might differ from matters already known and to allow the court to craft relevant discovery." Brescia v. Angelin, 172 Cal. App. 4th 133, 1447–50 (2009) (emphasis added) ("Absent a showing that elaboration is required to serve the [section's] goals, section 2019.210 should not be construed to require the claimant to explain why the alleged trade secret differs from matters already known in the industry.").

> Reasonable particularity mandated by section 2019.210 does not mean that the party alleging misappropriation has to define every minute detail of its claimed trade secret at the outset of the litigation. Nor does it require a discovery referee or trial court to conduct a miniature trial on the merits of a misappropriation claim before discovery may commence. Rather, it means that the plaintiff must make some showing that is reasonable, i.e., fair, proper, just and rational, under all of the circumstances to identify its alleged trade secret in a manner that will allow the trial court to control the scope of subsequent discovery, protect all parties' proprietary information, and allow them a fair opportunity to prepare and present their best case or defense at a trial on the merits.

3

Advanced Modular, 132 Cal. App. 4th at 835–36 (internal quotation marks and citation omitted); Brescia, 172 Cal. App. 4th at 148–49.

**B. Analysis**

**1. The MTD Order Did Not Determine That The TAC Satisfied § 2019.210.**

Plaintiff first contends that the court need not determine whether Exhibit A satisfies § 2019.210 because the court previously determined that the TAC's trade secret allegations satisfy that section's requirements.

Plaintiff is incorrect. In denying defendant's motion to dismiss, the court was required to determine whether the TAC stated a trade secrets claim—not whether the TAC's trade secret allegations satisfied § 2019.210. The MTD Order referenced § 2019.210, the California Uniform Trade Secrets Act, and cases discussing the same, as guiding principles to determine whether plaintiff could survive defendant's motion to dismiss. Those references, however, did not prejudge whether plaintiff's trade secret allegations satisfied § 2019.210. Indeed, it would have been imprudent to do so considering Gatan had not yet made a § 2019.210 designation.

Accordingly, the court next turns to whether Exhibit A satisfies § 2019.210.

**2. Exhibit A Does Not Satisfy § 2019.210.**

Pointing to the SBIR documentation, Gatan argues that Exhibit A enables Nion to discern the boundaries of the alleged trade secrets and, because Nion has not shown otherwise, no amendment is necessary. Nion argues, and the court agrees, that Gatan's Exhibit A falls short of satisfying § 2019.210.

First, Gatan's trade secrets designation does not limit the alleged trade secrets to those discussed in the SBIR documentation. Gatan contends that Nion should know the trade secrets at issue because Nion's SBIR application discusses them. If the trade secrets discussed in Nion's SBIR application are in fact the only trade secrets at issue, then Gatan's trade secrets designation should say so.

Second, as currently drafted, many of Gatan's designations could include not only any of Nion's spectrometer data but also any company's spectrometer data. For

4

1 example: "Details on how to improve dark reference via a script and how to adjust the
2 spectrometer to address beam traps and alignment issues." Ex. A ¶ 8; see also Ex. A
3 ¶ 4. All spectrometer manufacturers likely face similar issues. Relatedly, while
4 ostensibly directed at Gatan's technology, other designations are so vague that they
5 could apply to any spectrometer. For example: "Detailed specifications and engineering
6 drawings of the Quefina's mechanical and vacuum design including detail on the vacuum
7 o-rings (gaskets) used." Id. ¶ 3; see also Ex. A at ¶ 6. That designation would have just
8 as much meaning if it substituted "spectrometer" for "Quefina." Such generic
9 spectrometer concepts do not enable Nion to determine the bounds of discovery or
10 litigation, other than "spectrometers." See Loop AI Labs Inc. v. Gatti, 195 F. Supp. 3d
11 1107, 1114 (N.D. Cal. 2016). And those types of designations certainly do not allow Nion
12 to determine how Gatan's alleged trade secrets differ from matters already known to
13 those skilled in the trade. See Brescia, 172 Cal. App. 4th at 147–50.

14 Third, some of the designations do not provide information sufficient to prevent
15 Gatan from claiming new alleged trade secrets after the completion of discovery. For
16 example: "Details on noise characteristics of the electronics contained in various
17 iterations of Gatan lens cards." Ex. A ¶ 7; Ex. A ¶¶ 3, 5-9; see Imax Corp. v. Cinema
18 Techs., Inc., 152 F.3d 1161, 1167 (9th Cir. 1998) ("CTI could not be expected to prepare
19 its rebuttal to Imax's trade secrets claim without some concrete identification of exactly
20 which 'dimensions and tolerances' Imax alleged were incorporated into CTI's own
21 projector system."). Absent those "details," Gatan can later claim that different "details"
22 disclosed during discovery were in fact the trade secrets that the § 2019.210 designation
23 referenced. See Jobscience, Inc. v. CV Partners, Inc., No. C 13-04519 WHA, 2014 WL
24 852477, at *5 (N.D. Cal. Feb. 28, 2014) (to prohibit "vague pleading with the blanks to be
25 artfully filled in only after discovery," plaintiff must "identify, up front, and with specificity
26 the particulars of the trade secrets").

27 Lastly, general principles weigh against the designation being sufficient. "The fact
28 that Plaintiff publicly filed its trade secret disclosure belies the proposition that it contains

5

1 information specific enough to be considered 'confidential' trade secrets." Loop AI Labs
2 Inc., 195 F. Supp. 3d at 1112 (reasoning that the disclosure should likely include non-
3 public information because § 2019.210 contemplates protections under § 3426.5, which
4 in turn requires a court to preserve the secrecy of trade secrets by, for example, granting
5 protective orders). And Gatan's use of catchall words such as "including" weighs against
6 a finding that the designation satisfies § 2019.210 "because it does not clearly refer to
7 tangible trade secret material." Imax, 152 F.3d at 1167 (emphasis in original) (concluding
8 that the phrase "including every dimension and tolerance that defines or reflects that
9 design" was an insufficient disclosure).

## CONCLUSION

As the court concludes Gatan's trade secrets designation does not satisfy § 2019.210, Gatan is ORDERED to produce a revised § 2019.210 designation. The revised designation should include (i) a summary in plain English of the specific trade secrets at issue and (ii) a numbered list of the trade secrets with a corresponding list of specific elements for each, as claims would appear at the end of a patent. Though the revised designation need not explain how the alleged trade secrets differ from general knowledge in the trade, the designation must include sufficient detail to enable Nion to investigate and make that determination.

**IT IS SO ORDERED.**

Dated: May 8, 2018

_____
PHYLLIS J. HAMILTON
United States District Judge